IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| INDUCTION DEVICES LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>IKEA US RETAIL LLC,<br><br>    *Defendant.* | Civil Action No. 2:25-cv-777<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Induction Devices LLC ("Induction Devices" or "Plaintiff"), for its Complaint against Defendant IKEA US Retail LLC, (referred to herein as "IKEA" or "Defendant"), alleges the following:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

**THE PARTIES**

2. Plaintiff Induction Devices is a limited liability company organized under the laws of the State of Texas with a place of business at 3101 Boardwalk, Unit 3403 T2, Atlantic City, NJ 08401.

3. Upon information and belief, IKEA is a limited liability company organized under the laws of the State of Virginia with a place of business at 7171 Ikea Drive, Frisco, Texas 75034, and can be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Upon information and belief, IKEA sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district,

and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6. Venue is proper in this judicial district under 28 U.S.C. § 1400(b).

7. On information and belief, Defendant is subject to this Court's general and specific personal jurisdiction because Defendant has sufficient minimum contacts within the State of Texas and this District, pursuant to due process and/or the Texas Long Arm Statute because Defendant purposefully availed itself of the privileges of conducting business in the State of Texas and in this District, because Defendant regularly conducts and solicits business within the State of Texas and within this District, and because Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Texas and this District.

## U.S. PATENT NO. 7,449,926

8. On November 11, 2008, U.S. Patent No. 7,449,926 (the "'926 patent") was duly and legally issued by the United States Patent and Trademark Office under the title "Circuit for Asynchronously Resetting Synchronous Circuit." A true and correct copy of the '926 patent is attached as Exhibit A.

9. Plaintiff is the assignee and owner of the right, title, and interest in and to the '926 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

10. The '926 patent is directed to a reset signal generation circuit that selectively generates either a synchronous or asynchronous reset signal for a synchronous circuit based on whether the circuit is operating normally or abnormally. (*See* Ex. A at 1:61-2:1.)

11. The teachings of the '926 patent enhance the reliability of the circuit across normal and abnormal operation states. For example, "[t]he operation detection circuit 21 generates the operation detection signal OC indicating whether the CPU 11 is operating normally. The signal control circuit 22 generates the first reset signal C_RST that is synchronous or asynchronous to the internal clock signal CLK based on the operation detection signal OC and the system reset signal RSTX. When the CPU 11 is operating normally, the first reset signal C_RST that is synchronous to the internal clock signal CLK is generated. In this case, the CPU 11, the ROM 13, the RAM 14, and the peripheral circuit 15 are reset while the stored data of the RAM 14 and the data on the setting of the peripheral circuit 15 are held. When the CPU 11 is operating abnormally, the first reset signal C_RST that is asynchronous to the internal clock signal CLK is generated. In this case, all the synchronous circuits including the CPU 11 are immediately initialized." (Ex. A. at 6:58-7:6.)

12. The teachings of the '926 patent have the further advantage of resetting the circuit synchronously or asynchronously based on the detected voltage in the circuit. "The signal control circuit 22 further generates the first reset signal C_RST based on the voltage detection signal LV having a level that is in accordance with the level of the power supply voltage Vcc. This enables the reset signal generation circuit 16 to selectively generate the first reset signal C_RST synchronous to the clock signal CLK or the first reset signal C_RST asynchronous to the clock signal CLK based on the operation detection signal OC and the voltage detection signal LV." (Ex. A. at 7:7-15.)

## U.S. PATENT NO. 7,899,145

13. On March 1, 2011, U.S. Patent No. 7,889,145 (the "'145 patent") was duly and legally issued by the United States Patent and Trademark Office under the title "Circuit, System, and Method for Multiplexing Signals with Reduced Jitter." A true and correct copy of the '145 patent is attached as Exhibit B.

14. Plaintiff is the assignee and owner of the right, title, and interest in and to the '145 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

15. The '145 patent is directed to electronic circuits, and more specifically to a multiplexer circuit and method that reduces jitter by distributing logic gates across multiple power supply domains and ensuring that only one signal is active at a time, thereby eliminating crosstalk and power supply noise at the logic gate inputs. (*See* Ex. B at 1:15-17; 3:13-34; 7:17-36.)

16. The '145 patent explains the disadvantages with prior techniques that were developed to minimize the effects of timing delays, such as certain clock skew and jitter which degraded the performance and reliability of synchronous systems. (Ex. B at 1:49-52.) Some prior techniques involved including more than one phase lock loop (PLL) or delay lock loop (DLL) within a clock network for adjusting the timing of the clock path. (*Id.* at 2:38-56.) A multiplexer circuit may have been included for selectively applying one of the PLL/DLL output signals to the clock path. (*Id.* at 2:56-59.) However, prior multiplexer designs added crosstalk and power supply noise to the clock path when multiplexing signals (i.e., choosing between more than one signal) from the PLL/DLLs, which was undesirable in clock networks. (*Id.* at 2:60-63.)

17. The '145 patent overcame those disadvantages by teaching, among other things, an improved multiplexer circuit with a first logic gate coupled for receiving a first signal, a

second logic gate coupled for receiving a second signal, and a third logic gate coupled to outputs of the first and second logic gates for transmitting either the first signal or the second signal. (Ex. B at 3:13-20.) A logic block may be configured for deactivating one of the first and second signals by supplying a static control signal to the first and second logic gates, ensuring that only one active signal (e.g., either the first signal or the second signal) is supplied to the inputs of the first, second, and third logic gates. (*Id.* at 3:20-26.) This can eliminate crosstalk and power supply noise injection at the inputs of the logic gates. The '145 patent further teaches that a user may arrange the logic gates within separate power domains to further isolate the logic gate inputs. (*Id.* at 3:26-28.)

## PRIOR LITIGATION OF THE '145 PATENT

18. The '145 patent was previously litigated in the Western District of Texas in C.A. Nos. 6:21-cv-839 and 6:21-cv-936 (collectively the "Prior Litigations"), however, the Prior Litigations were resolved before any substantive matters were addressed.

## U.S. PATENT NO. 8,190,885

19. On May 29, 2012, U.S. Patent No. 8,190,885 (the "'885 patent") was duly and legally issued by the United States Patent and Trademark Office under the title "Non-Volatile Memory Sub-System Integrated with Security for Storing Near Field Transactions." A true and correct copy of the '885 patent is attached as Exhibit C.

20. Plaintiff is the assignee and owner of the right, title, and interest in and to the '885 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

21. The '885 patent is directed to a memory module that integrates multiple components including non-volatile memory, a security processor, and a near field

communication (NFC) radio frequency component to securely store and process NFC transaction data within a secure execution environment. (*See* Ex. C at Abstract; 2:49-65; 4:25-57; 5:49-63.)

22. The teachings of the '885 patent provide heightened security through the tight integration of NFC functionality with a security processor and non-volatile memory, creating a secure environment where NFC transactions can be conducted securely while preventing unauthorized and ensuring data integrity. (Ex. C at 1:47-60.) Additionally, the claimed inventions allow for the creation of memory partitions with individualized access rights enforced by the integrated security processor, offering a more robust and secure alternative to the external-based access control used in prior systems. (*Id.* at 6:16-20.) The '885 patent also enables secure logging of NFC transactions which can be flexibly exported, thereby enhancing the traceability and usability of transaction data while maintaining security. (*Id.* at 2:5-9.)

## U.S. PATENT NO. 8,370,543

23. On February 5, 2013, U.S. Patent No. 8,370,543 (the "'543 patent") was duly and legally issued by the United States Patent and Trademark Office under the title "Busy Detection Logic for Asynchronous Communication Port." A true and correct copy of the '543 patent is attached as Exhibit D.

24. Plaintiff is the assignee and owner of the right, title, and interest in and to the '543 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them, including all past infringement.

25. The '543 patent is directed to systems and methods for synchronizing device resource access information between independent time domains, such as between a processor operating in one clock domain and a memory device operating in another, without requiring high-speed clocks or imposing minimum pulse width requirements on control signals. (Ex. D at 2:9-19.)

26. Conventional synchronization designs at the time either (1) imposed a restriction that the pulse width of a read/write signal must be greater than the sampling clock period; or (2) required the use of a high-speed clock to overcome that restriction. However, use of a high-speed clock resulted in increased physical complexity, power consumption, and design cost of the circuit. (Ex. D at 1:32-2:5.)

27. The benefits of the '543 patent include eliminating the restrictions on pulse width without fast clocks for synchronizing device access information between independent time and thus a substantial improvement in design and performance of time independent domain devices is achieved. (Ex. D at 6:37-41.)

## U.S. PATENT NO. 8,543,628

28. On September 24, 2013, U.S. Patent No. 8,543,628 (the "'628 patent") was duly and legally issued by the United States Patent and Trademark Office under the title "Method and System of Digital Signal Processing." A true and correct copy of the '628 patent is attached as Exhibit E.

29. The '628 patent is directed to a programmable system on a chip including a dynamically reconfigurable digital filtering system in which instruction sets from a microcontroller configure a controller and an address-calculation device to select filter-coefficient addresses, while a data path device uses the identified coefficients to perform digital signal processing, such as digital filtering, on incoming digital data. (Ex. E at 2:23-3:2.)

30. Improvements from the teachings of the '628 patent include dynamic reconfiguration and resource efficiency (Ex. E at 2:23-31); avoidance of resource consumption (*id.* at 3:7-12); scalable, compact memory architecture (*id.* at 3:12-15); hierarchical controllers resulting in reduced-size memory devices (*id.* at 3:59-66); and single-die integration (*id.* at 4:2-5), among others.

## COUNT I – INFRINGEMENT OF THE '926 PATENT

31. The allegations set forth in the foregoing paragraphs 1 through 30 are incorporated into this First Claim for Relief.

32. Upon information and belief, Defendant has and continues to indirectly infringe at least claim 1 of the '926 patent under 35 U.S.C. §§ 271(b) by inducing the direct infringement of the '926 patent by others, including but not limited to Defendant's partners, clients, customers, and end users, through the provision and support of branded contactless consumer credit cards (the "Accused Instrumentalities").

33. Exemplary infringement analysis showing direct infringement of claim 1 of the '926 patent by Defendant's partners, clients, customers, and end users is set forth in Exhibit A-1. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Defendant with respect to the '926 patent. Plaintiff reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '926 patent.

34. On information and belief, these Accused Instrumentalities are marketed, provided to, and/or used by or for Defendant's partners, clients, customers and end users across the country and in this District, resulting in acts of direct infringement by those third parties.

35. Defendant was made aware of the '926 patent and its inducement of infringement thereof at least as early as the filing of this Complaint.

36. Upon information and belief, since at least the time Defendant received notice, Defendant has induced and continues to induce others to infringe at least one claim of the '926 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to

Defendant's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement.

37. In particular, Defendant's actions that aid and abet others to infringe such as its partners, customers, clients, and end users, include advertising and distributing the Accused Instrumentalities and providing instruction materials, training, and services regarding the Accused Instrumentalities. On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the '926 patent and knowledge that its acts were inducing infringement since at least the date of receiving notice.

38. Since the filing of this Complaint, Defendant's induced infringement has been willful.

39. The Accused Instrumentalities have been and continue to be used in a manner that results in the infringement of claim 1 of the '926 patent during the pendency of the '926 patent.

40. Plaintiff has been harmed by Defendant's acts of induced infringement.

## COUNT II – INFRINGEMENT OF THE '145 PATENT

41. The allegations set forth in the foregoing paragraphs 1 through 40 are incorporated into this Second Claim for Relief.

42. Upon information and belief, Defendant has and continues to indirectly infringe at least claim 10 of the '145 patent under 35 U.S.C. §§ 271(b) by inducing the direct infringement of the '145 patent by others, including but not limited to Defendant's partners, clients, customers, and end users, through the provision and support of branded contactless consumer credit cards (the "Accused Instrumentalities").

43. Exemplary infringement analysis showing direct infringement of claim 10 of the '145 patent by Defendant's partners, clients, customers, and end users is set forth in Exhibit B-1.

This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Defendant with respect to the '145 patent. Plaintiff reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '145 patent.

44. On information and belief, these Accused Instrumentalities are marketed, provided to, and/or used by or for Defendant's partners, clients, customers and end users across the country and in this District, resulting in acts of direct infringement by those third parties.

45. Defendant was made aware of the '145 patent and its inducement of infringement thereof at least as early as the filing of this Complaint.

46. Upon information and belief, since at least the time Defendant received notice, Defendant has induced and continues to induce others to infringe at least one claim of the '145 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendant's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement.

47. In particular, Defendant's actions that aid and abet others to infringe such as its partners, customers, clients, and end users, include advertising and distributing the Accused Instrumentalities and providing instruction materials, training, and services regarding the Accused Instrumentalities. On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the '145 patent and knowledge that its acts were inducing infringement since at least the date of receiving notice.

48. Since the filing of this Complaint, Defendant's induced infringement has been willful.

49. The Accused Instrumentalities have been and continue to be used in a manner that results in the infringement of claim 10 of the '145 patent during the pendency of the '145 patent.

50. Plaintiff has been harmed by Defendant's acts of induced infringement.

### COUNT III – INFRINGEMENT OF THE '885 PATENT

51. The allegations set forth in the foregoing paragraphs 1 through 50 are incorporated into this Third Claim for Relief.

52. Upon information and belief, Defendant has and continues to indirectly infringe at least claims 1 and 3 of the '885 patent under 35 U.S.C. §§ 271(b) by inducing the direct infringement of the '885 patent by others, including but not limited to Defendant's partners, clients, customers, and end users, through the provision and support of branded contactless consumer credit cards (the "Accused Instrumentalities").

53. Exemplary infringement analysis showing direct infringement of claims 1 and 3 of the '885 patent by Defendant's partners, clients, customers, and end users is set forth in Exhibit C-1.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Defendant with respect to the '885 patent.  Plaintiff reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '885 patent.

54. On information and belief, these Accused Instrumentalities are marketed, provided to, and/or used by or for Defendant's partners, clients, customers and end users across the country and in this District, resulting in acts of direct infringement by those third parties.

55. Defendant was made aware of the '885 patent and its inducement of infringement thereof at least as early as the filing of this Complaint.

56. Upon information and belief, since at least the time Defendant received notice, Defendant has induced and continues to induce others to infringe at least one claim of the '885 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendant's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement.

57. In particular, Defendant's actions that aid and abet others to infringe such as its partners, customers, clients, and end users, include advertising and distributing the Accused Instrumentalities and providing instruction materials, training, and services regarding the Accused Instrumentalities. On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the '885 patent and knowledge that its acts were inducing infringement since at least the date of receiving notice.

58. Since the filing of this Complaint, Defendant's induced infringement has been willful.

59. The Accused Instrumentalities have been and continue to be used in a manner that results in the infringement of claims 1 and 3 of the '885 patent during the pendency of the '885 patent.

60. Plaintiff has been harmed by Defendant's acts of induced infringement.

## COUNT IV – INFRINGEMENT OF THE '543 PATENT

61. The allegations set forth in the foregoing paragraphs 1 through 60 are incorporated into this Fourth Claim for Relief.

62. Upon information and belief, each Defendant has and continues to indirectly infringe at least claim 16 of the '543 patent under 35 U.S.C. §§ 271(b) inducing the direct infringement of the '543 patent by others, including but not limited to each Defendant's partners, clients, customers, and end users, through the provision and support of branded contactless consumer credit cards (the "Accused Instrumentalities").

63. Exemplary infringement analysis showing direct infringement of claim 1 of the '543 patent by Defendants' partners, clients, customers, and end users is set forth in Exhibit D-1. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Defendants with respect to the '543 patent. Plaintiff reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '543 patent.

64. On information and belief, these Accused Instrumentalities are marketed, provided to, and/or used by or for Defendants' partners, clients, customers and end users across the country and in this District, resulting in acts of direct infringement by those third parties.

65. Each Defendant was made aware of the '543 patent and its inducement of infringement thereof at least as early as the filing of this Complaint.

66. Upon information and belief, since at least the time each Defendant received notice, each Defendant has induced and continues to induce others to infringe at least one claim of the '543 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to each Defendant's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement.

67. In particular, each Defendant's actions that aid and abet others to infringe such as its partners, customers, clients, and end users, include advertising and distributing the Accused Instrumentalities and providing instruction materials, training, and services regarding the Accused Instrumentalities. On information and belief, Defendants have engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because each Defendant has had actual knowledge of the '543 patent and knowledge that its acts were inducing infringement since at least the date of receiving notice.

68. Since the filing of this Complaint, each Defendant's induced infringement has been willful.

69. The Accused Instrumentalities have been and continue to be used in a manner that results in the infringement of claim 16 of the '543 patent during the pendency of the '543 patent.

70. Plaintiff has been harmed by each Defendant's acts of induced infringement.

## COUNT V – INFRINGEMENT OF THE '628 PATENT

71. The allegations set forth in the foregoing paragraphs 1 through 70 are incorporated into this Fifth Claim for Relief.

72. Upon information and belief, Defendant has and continues to indirectly infringe at least claim 1 of the '628 patent under 35 U.S.C. §§ 271(b) by inducing the direct infringement of the '628 patent by others, including but not limited to Defendant's partners, clients, customers, and end users, through the provision and support of branded contactless consumer credit cards (the "Accused Instrumentalities").

73. Exemplary infringement analysis showing direct infringement of claim 1 of the '628 patent by Defendant's partners, clients, customers, and end users is set forth in Exhibit E-1. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Defendant with respect to the '628 patent. Plaintiff reserves all rights to

amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '628 patent.

74. On information and belief, these Accused Instrumentalities are marketed, provided to, and/or used by or for Defendant's partners, clients, customers and end users across the country and in this District, resulting in acts of direct infringement by those third parties.

75. Defendant was made aware of the '628 patent and its inducement of infringement thereof at least as early as the filing of this Complaint.

76. Upon information and belief, since at least the time Defendant received notice, Defendant has induced and continues to induce others to infringe at least one claim of the '628 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendant's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement.

77. In particular, Defendant's actions that aid and abet others to infringe such as its partners, customers, clients, and end users, include advertising and distributing the Accused Instrumentalities and providing instruction materials, training, and services regarding the Accused Instrumentalities. On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the '628 patent and knowledge that its acts were inducing infringement since at least the date of receiving notice.

78. Since the filing of this Complaint, Defendant's induced infringement has been willful.

79. The Accused Instrumentalities have been and continue to be used in a manner that results in the infringement of claim 1 of the '628 patent during the pendency of the '628 patent.

80. Plaintiff has been harmed by Defendant's acts of induced infringement.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for itself and against IKEA as follows:

A. An adjudication that IKEA has induced infringement of the '926, '145, '885, '543, and '628 patents;

B. An award of damages to be paid by IKEA adequate to compensate Plaintiff for IKEA's inducement of infringement of the '926, '145, '885, '543, and '628 patents since at least the filing of the Complaint, and any continuing or future inducement of infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorneys' fees; and

D. An award to Plaintiff of such further relief at law or in equity as the Court deems just and proper.

Dated: August 8, 2025                           SHEA | BEATY PLLC

                                                 */s/ Trevor J. Beaty*
                                                 Trevor J. Beaty
                                                 trevor@sheabeaty.com
                                                 One Grand Centre
                                                 1800 Teague Drive, Suite 500
                                                 Sherman, TX 75090
                                                 Tel: (903) 870-7771

                                                 *Attorneys for Plaintiff*
                                                 *Induction Devices LLC*